KATIE McCLOUD and MACK H. CRIBB, Respond--
ents, v. WESTERN UNION TELEGRAPH CO.,
Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. TELEGRAPH AND TELEPHONES: Penalty for Failure to
Transmit Telegram. Plaintiffs, desiring to send a telegram,
sent their servant to the telegraph office with the money to pay
for same. The servant appeared at the window and announced
his business. A young man in the office handed him a blank,
and at the servant's dictation wrote the telegram. The servant
inquired the charge and the reply was "25 cents." The servant
handed the young man a dollar and the young man unlocked
the money drawer, put the dollar in and handed the servant the
change. When asked how soon the telegram would go out, the
young man replied, "Right away." There was evidence that the
regular operator was in the room sitting at the table. The
young man placed the telegram on the hook for telegrams to be
transmitted but it was never sent. It was shown that the
operator was agent for the telegraph company, the railroad com-
pany and the express company, and all three of the offices were
in the same room and only one money drawer. The young
man was paid by the railroad company but he was the operator's
helper, his duty being to do anything required of him by the
operator with reference to his work for all three companies.
The operator· denied being present, and both the operator and
the. young man say he was not the agent of defendant. The
operator and the young man contradicted each other in several
important particulars. *Held*, there was sufficient evidence to
justify the submission to the jury of the question whether the
young man was the defendant's agent for the purpose of re-
ceiving the telegram for. transmission, and the jury having
found that he was such agent, the defendant is liable for the
statutory penalty.

2. ———: Agency: Evidence. Agency cannot be established
by the mere declarations of an agent, but it can by his testimony.
It can also be shown as an inference from the admitted conduct
and course of dealing between the principal and agent in the
community.

Appeal from Grundy Circuit Court.—*Hon. Geo. W.
Wanamaker*, Judge.

AFFIRMED.

*Fred S. Hudson* and *E. R. Sheetz* for appellant.

(1)  This being a penalty statute and highly penal, must be .strictly construed and nothing can be taken by intendment, but shall apply only to such cases as fall strictly and fully within its provisions, and plaintiff must bring himself fully within the provisions of the statute in order to recover. Woods v. Telegraph Co., 59 Mo. App. 236; Rixke v. Telegraph Co., 96 Mo. App. 406; Eddington v. Telegraph Co., 115 Mo. App. 93; Bradshaw v. Telegraph Co., 150 Mo. App. 711; Grant v. Telegraph Co., 154 Mo. App. 279.    (2) Plaintiffs must not only plead but prove every fact necessary to bring themselves within the provisions of the statute and in this case it is absolutely necessary to prove that the message was delivered to the company's duly authorized agent.  Kingston v. Newall, 125 Mo. App. 389; State v. Railway, 83 Mo. 144; Snow v. Bass, 174 Mo. 149; Wood v. Telegraph Co., 59 Mo. App. 236; Bradshaw v. Telegraph Co., 150 Mo. App. 711.  (3)  An agency cannot be proved by the statements or even admissions of a supposed agent. Before plaintiffs can recover, they must prove that Everett Cox, the boy to whom the message was delivered for transmission, was the agent of the telegraph company.  Bank v. Morris, 125 Mo. 350; Bank v. Eysen, 116 Mo. 68; Diehl v. Railway, 37 Mo. App. 454; Meechem on Agency, sec. 100.  (4)  Plaintiffs failed to bring themselves within the statute by failing to show that Cox was the agent of the telegraph company.  Wood v. Telegraph Co., 59 Mo. App. 236; Bradshaw v. Telegraph Co., 150 Mo. App. 711.  (5)  Cox was the agent of plaintiffs in the writing and preparing the messages for filing with the company.  If he failed to file it for transmission with the company, the company is not liable  Lavelle v. Telegraph Co., 145 S. W. 205; Telegraph Co. v. Epster, 64 Tex. 220:

Telegraph Co. v. Edsell, 63 Tex. 668; Telegraph Co. v. Prevatt, 43 So. 108; Telegraph Co. v. Jackson, 50 So. 319; Telegraph Co. v. Benson, 48 So. 717.

*Platt Hubbel* and *George Hubbel* for respondents.

(1) This is an action to recover the statutory penalty for the failure to transmit and deliver a message. R. S. 1909, sec. 3330. (2) The defendant admits that the message was received for transmission, and that the message was never transmitted—but, now says that there is not sufficient evidence to submit to the jury, the question whether the man received the message for transmission (and who collected the money for transmitting and delivering the message) was defendant's agent for that purpose. Usher v. Telegraph Co., 122 Mo. App. 98; Lavelle v. Telegraph Co.; 145 S. W. 205; Keeting v. Telegraph Co., 152 S. W. 95; Hackett v. Van Frank, 105 Mo. App. 399; Bonner v. Lisenby, 86 App. 670; Hefferman v. Boteler, 87 Mo. App. 322. (3) The telegraph company is liable to either the sender or adressee of an unrepeated message, for a failure to transmit. Cannot contract against negligence. Reed v. Telegraph Co., 135 Mo. 661; Failure to transmit is evidence of negligence. 12 Ency. of Ev. 408. (4) Proof that the company failed to transmit the message that is, that it was not received at the office at St. Louis, is certainly *prima facie* evidence that it was not started. Barrett v. Telegraph Co., 42 Mo. App. 546. (5) Plaintiff does not need to show wilful neglect, partiality or bad faith. Burnett v. Telegraph Co., 39 Mo. App. 607. (6) Burden of proof is on the defendant to show lack of notice. Covell v. W. U. T. Co., 164 Mo. App. 630; Paul v. W. U. T. Co., 164 Mo. App. 233; Wilkinson v. W. U. T. Co., 163 Mo. App. 71; 15 Mo. Dig. Supp. 774 (West Pub. Co.); 13 Mo. Dig. Supp. 958 (West Pub Co.).

TRIMBLE, J.—Plaintiffs, as the persons desiring to send a dispatch over defendant's line from Mercer to Trenton, sue to recover the penalty of $300 under section 3330, Revised Statutes of Missouri, 1909, for failure to transmit said message. I. E. Cribb, the father of plaintiffs, was seriously ill near Mercer, and Mack H. Cribb, one of the plaintiffs, sent a message to A. F. McCloud, the husband of his sister and coplaintiff Katie McCloud, saying, "Come today." This message was sent Monday morning, November 6, 1911, and was sent "collect," A. F. McCloud paying for it when it was received in Trenton. In response to this message his wife, Katie McCloud, left Trenton, and went to Mercer, on the noon train of that day. Before leaving, she agreed with her husband that she would telegraph him to come to Mercer if her father died.

Upon arriving at Mercer she met her brother, Mack H. Cribb, at one of the stores in town, and was informed that her father was dead. It was then about two o'clock in the afternoon, and, as they would have to see the undertaker and select a casket and then drive out to their father's residence as soon as possible they sent the hired man, John Scott, to the depot to telegraph the husband, A. F. McCloud, to come, as the wife had agreed to do before she left Trenton.

Scott went to the telegraph station and caused a telegram to be prepared on one of defendant's blanks addressed to A. F. McCloud saying, "Come home tonight," and delivered it to a young man in the office who collected from him the twenty-five cents charges due for sending the message. Scott then reported to plaintiffs the message had been sent.

The message was never sent, however, and McCloud did not come, and by reason of this fact was not enabled to be present at the funeral of deceased. Result: This suit in which the statutory penalty was recovered in the trial court, two thirds of which was

awarded to the plaintiffs and one third to the county school fund of Grundy county.

The defendant does not deny that the telegram was prepared and left in the telegraph office nor that the charges thereon were duly paid; and there is no dispute over the fact that the telegram was never sent. The contention is, however, that the man in the telegraph office, with whom Scott left the telegram and the money, was not the defendant's agent for receiving transmitting and delivering the message, and, therefore, defendant is not liable. As this issue was submitted to the jury under proper instructions, and it found a verdict for plaintiffs, the point, in the appellate court, resolves itself into this question: Was there sufficient evidence to submit to the jury the question whether the man who received the message, and who collected the charges due thereon for transmitting and delivering the message, was defendant's agent for that purpose?

According to Scott's testimony, when he appeared at the counter of the telegraph office, the regular operator, Shouse, was sitting at the table on which were the keys of the telegraph instruments, and a young man by the name of Cox was also in the office. When Scott announced that he desired to send a telegram, Cox arose, came to the counter and handed Scott a regular telegraph blank. Whereupon Scott asked him to writ it for him as Cox was a better scribe than he. Cox did so, and when the telegram was completed to Scott's satisfaction, the latter asked what the charges were. Cox looked in a book of charges or tariffs kept by the company for the information of its agents and then replied that the charge was twenty-five cents. Scott then handed him a dollar and Cox unlocked the money drawer or till, dropped the dollar in, and gave Scott the change therefrom. Whereupon Scott asked him when the message would go out and Cox replied, "Right away." All this took place within the sight

and hearing of Shouse the regular operator who made no objection but apparently acquiesced therein.

The only part of the above which is denied is the claim that Shouse was present. Cox also says that when Scott told him he wanted to send a telegram he (Cox) replied he was not the agent, that he was over in town, and that Scott then said he was in a hurry and asked him to take it, which he did and collected the money for it and placed the message on the regular hook for holding messages to be sent; that he forgot to call the agent's attention to it when the latter returned and that the wind must have blown it off the hook to the floor where it was not discovered till next day.

It is true that the action is penal in its nature and plaintiffs, to recover, must bring themselves strictly within the terms of the statute; and the dispatch must be delivered to an agent of the company. [Pollard v. Telephone Co., 114 Mo. App. 153.] But this does not mean that the message must be handed in person to the operator who does the work of actually sending messages. If Cox was defendant's agent for the purpose of receiving messages to be transmitted and the message was delivered to such agent in the telegraph office and the fee paid thereon, then the penalty is recoverable.

We think the evidence was ample to support a finding by the jury that Cox was defendant's agent for the purpose of receiving the message.

It is conceded that Shouse was station agent for the Rock Island railroad, agent for the U. S. Express Company and defendant's operator, and that the offices of all three were in one and the same place. The money paid to each company at this station was placed in one common till or drawer. It is also admitted that Cox was Shouse's helper, that he obeyed whatever orders the latter gave him and his duty was to do everything Shouse asked him to do; and that Cox car-

ried a key to the money drawer. Cox, in testifying for defendant, said he was not only supposed to do anything Mr. Shouse asked him to do but that he assisted Mr. Shouse with respect to his work concerning all three of the companies. It was also in evidence that, since the occurrence in controversy, Cox has remained in that office in the same capacity, receiving other telegrams from persons desiring to transmit them, and collecting the money therefor. The only thing offered to show that Cox is not defendant's agent is the testimony of Shouse and Cox that Cox is paid by the Rock Island railway, and their statement (which under the circumstances is but the mere expression of a legal conclusion) that he was not defendant's agent. Shouse denies that he was in the office when the telegram was handed in for transmission. But even on the theory that he was not present, there are enough circumstances proved to warrant the jury in finding that Cox was the agent of defendant in receiving the telegram for transmission. According to Cox he was a practical operator, and when Shouse left the office to go up in town, "he left me in charge of the office." His duty was to obey Shouse's orders and help him in his work for all three companies. He collected the charges and put both money and telegram in the proper place, one in the money drawer and the other on the hook containing messages to be sent. Agency may be shown by direct or indirect evidence, that is, by positive testimony or by relevant circumstances. [Hackett v. Van Frank, 105 Mo. App. 384, l. c. 399; Bonner v. Lisenby, 86 Mo. App. 666, l. c. 670; Hefferman v. Boteler, 87 Mo. App. 316, l. c. 322.] Agency cannot be proved by the declarations of the person alleged to be agent, but his testimony on the point is competent for that purpose. [Christian v. Smith, 85 Mo. App. 117, l. c. 122.] Agency can be established by the testimony of the agent or it may be implied from the conduct of the agent and the

principal and the course of dealing between them in the community. [Haubell Bros. v. Mill Co., 77 Mo. App. 672; State ex rel. v. Henderson, 86 Mo. App. 482, l. c. 490.] The facts testified to by Scott and Cox, and about which they agreed, show that Cox was defendant's agent for the purpose of accepting this telegram notwithstanding Cox's conclusion that he was not its agent. The fact that Cox wrote out the telegram at Scott's dictation did not cause him to cease being defendant's agent to receive said message for transmission. [Laville v. Western Union Tel. Co., 145 S. W. 205; Keeting v. Western Union Tel. Co., 152 S. W. 95, l. c. 96.]

In addition to the testimony of Scott and the admissions of Cox and the conceded facts from which an inference of agency could legally arise, the testimony of Cox and Shouse, both testifying for the defendant, contained enough contradictions of each other to justify the jury in accepting Scott's version as the true one in preference to either or both Cox and Shouse's testimony. Cox swore he was a practical telegraph operator; Shouse swore he was not. Cox said the second message which was never sent was discussed the next day by both Shouse and him; Shouse says he never heard of the message until claim was made against the company for damages. Cox says the message was found next morning on the table among some blanks or stationery; Shouse says it was found in a drawer. Cox says the message when received by him and placed on a hook, where messages were customarily hung before being sent, and that evidently the wind blew it off the hook; Shouse says there were no indications on the message to show it had ever been on the hook. And the message in the possession of the defendant was never produced at the trial in order that it might speak for itself.

These contradictions, and certain testimony concerning the checking over of the telegram sent and

the cash received, tends very strongly to show that by some mistake the afternoon telegram was confused with the morning telegram, since they were each addressed to the same person and contained practically the same message. And the fact that one of them was sent "collect" would cause no error to appear in the cash as each would check against the same twenty-five cents. But even if such mistake unfortunately occurred, defendant is still subject to the penalty, since the plaintiff does not have to show wilful neglect, partiality or bad faith. [Burnett v. Western Union Tel. Co., 39 Mo. App. 599, l. c. 607.]

Under all the circumstances the evidence was sufficient to support the jury's finding that Cox was defendant's agent to receive the telegram for transmission. Such finding, therefore, cannot be disturbed. The judgment is accordingly affirmed. All concur.