601 F.Supp. 58 (1984)
HAMPTON FOODS, INC., Plaintiff,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant.
No. 81-0564C(4).
United States District Court, E.D. Missouri, E.D.
November 27, 1984.
*59 *60 John A. Walsh, Jr., Robert P. Baine, Jr., St. Louis, Mo., for plaintiff.
Bernard C. Brinker, St. Louis, Mo., for defendant.

MEMORANDUM
CAHILL, District Judge.
This Court in a previous order dated May 9, 1983, granted the plaintiff (Hampton Foods, Inc.), partial summary judgment on the issue of liability. The remaining issue of damages will now be addressed by the Court.
The Plaintiff commenced this action seeking to recover damages for (1) lost earnings, (2) interest and wage expenses, (3) loss of business personal property, (4) loss of leased business personal property, and (5) vexatious refusal to pay the insurance claim. This Court, upon careful consideration of all of the documents, memoranda, and affidavits presented, comes to the following conclusions in regards to damages.

BUSINESS INTERRUPTION COVERAGE.

1. Profits.
Under Part III of the plaintiff's insurance policy, the defendant agreed to insure the plaintiff against loss of earnings and additional costs and expenses resulting from an interruption of business. The plaintiff attempts to recover for lost net earnings based on projected and anticipated profits. While it is true that there are some instances in which a new business may recover anticipated profits, the case now before the Court is not one of those instances.
Plaintiff's expert witness projected a 10% annual increase in sales from July 1980 to July 1982. The expert's conclusions were based on increasing gross profits and decreasing operating expenses during the last six months of operation of Hampton Foods. This Court, however, is of the opinion that the projections of the expert witness were far too speculative to justify allowing the plaintiff to recover for projected lost profits. Plaintiff suffered an operating net loss of $108,983 during its first year of operation, and a net loss of $148,263 during its second. It appears highly unlikely to this Court that Hampton Foods would have generated a profit of $117,000 as suggested by the plaintiff. Thus, it is the opinion of this Court that plaintiff cannot recover the projected lost profits because they are too speculative in nature. See Handi Caddy, Inc. v. American Home Prod. Corp., 557 F.2d 136, 139 (8th Cir.1977).

2. Interest Expense.
The plaintiff categorizes its interest expense as an operating cost. Thus, the plaintiff asserts that the interest expense comes within the coverage of the insurance policy. Part III, subpart A(1), of the plaintiff's insurance policy states that
The company shall be liable for the excess of the total costs and expenses of the operation of the business during the period of restoration ... over and above the total costs of such operation that would normally have been incurred during the same period, had there been no interruption of business. (Emphasis added.)
The plaintiff cannot recover its interest expense based on the above clause. Plaintiff's interest expense was a normal operating cost. The interest expense did not constitute excess costs as required by the above clause. The plaintiff is also unable to recover for interest expense under subpart A(4) of the insurance policy, which states that the defendants would be liable

*61 For such expenses as are necessarily incurred for the purpose of reducing loss under this policy....
The plaintiff cannot argue that the interest expense was incurred to reduce losses. Thus, plaintiff cannot recover under subpart A(4) of the insurance policy.
The Court recognizes that under Missouri law, the plain and unambiguous language in an insurance policy must be given its ordinary meaning and effect. See Robin v. Blue Cross Hospital Service, Inc., 637 S.W.2d 695, 698 (Mo.1982). Construction of the insurance policy should only be resorted to where an ambiguity exists. Id. at 698. If the language used is reasonably susceptible to two interpretations, an ambiguity exists. Id. Any ambiguity is construed in favor of the insured. Id. at 698; Heshion Motors v. Western International Hotels, 600 S.W.2d 526, 537 (Mo.App.1980). The Court does find that an ambiguity existed within the insurance contract, and construes the contract in the light most favorable to the plaintiff. But even when deference is given to the plaintiff, the Court must still conclude that the plaintiff cannot recover its interest expenses from the defendant based on the business interruption section of the insurance policy. See Northwestern States Portland Cem. Co. v. Hartford Fire and Insurance Co., 360 F.2d 531, 534 (8th Cir. 1966).

WAGE EXPENSE.
Plaintiff asserts a claim for $15,225 for services rendered by one of its employees (Mrs. Hipp). The Court is of the opinion that it was not unreasonable for the plaintiff to continue to employ Mrs. Hipp to handle matters that occurred after the business was closed. Indeed, such an expense can be categorized as one incurred to prevent further loss. Therefore, the plaintiff is entitled to recover for wage expenses. The Court will, however, limit such expenses to $9,100 which covers payments made to Mrs. Hipp during the time that she was a full-time employee of Hampton Foods.

BUSINESS PERSONAL PROPERTY.
The plaintiff asserts that it is entitled to $80,914.66 as a result of the loss suffered to its business personal property. The Court concludes that the plaintiff is entitled to such a loss. Part II of the insurance policy states that "the defendant will be liable for loss to business personal property ... while in or on the premises [of the insured]." The plaintiff's loss fits within this clause. The amount recoverable, however, must be reduced by the amount obtained from the sale of those items sold at salvage prices. The defendant, however, is liable for the expenses incurred in salvaging the goods and the commission that was paid to the salvager.

LEASED BUSINESS PERSONAL PROPERTY.
Originally, the plaintiff asked this Court to grant its request for a separate trial on the issue of leased business personal property. Later, the plaintiff filed a motion asking this Court to allow voluntary dismissal of the above claim without prejudice. This Court subsequently set a hearing on the issue of the leased business personal property. Upon reflection, the Court is of the opinion that the plaintiff's request to dismiss the leased business personal property claim should have been granted. Such dismissal is warranted in light of the fact that another trial will take place involving the plaintiff and an outside party concerning the plaintiff's liability for the destruction of the leased items. Therefore, to prevent inconsistent determinations, the Court will grant the plaintiff's request to dismiss the above issue from this case.

VEXATIOUS REFUSAL TO PAY.
MO.REV.STAT. §§ 375.296 and 375.420 allow the insured to recover damages for vexatious refusal to pay. It is the opinion of this Court that the statute should not be enforced against the defendant in this case because there existed genuine issues regarding the coverage of the *62 insurance policy. "Where there [are] open question[s] of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay." Taylor v. Commercial Union Ins. Co., 614 F.2d 160, 165 (8th Cir.1980); citing United States v. F.D. Rich Co., 439 F.2d 895, 905 (8th Cir.1971). Thus, the Court concludes that the plaintiff may not recover for vexatious refusal to pay.
Accordingly,
Pursuant to the Court's previous Order of May 9, 1983, the Court enters judgment in favor of the plaintiff in the amount of $58,331.08. The Court assesses 9% interest on the judgment amount, and such interest shall begin to accrue upon the filing of this Order.
Further, plaintiff's claim for loss to rented business personal property is dismissed without prejudice.